UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN W. MALBURG, Personal
Representative of the Estate of　　　　　　　　　　Case No. 11-14856
RANDY WILLIAM MALBURG,
Deceased,

　　　　　　　Plaintiff,　　　　　　　　　　　　Paul D. Borman
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge
v.

BRIAN E. GRATE and KAGY
FARMS, LLC, jointly and severally,

　　　　　　　Defendants.
_____/

OPINION AND ORDER REGARDING CERTAIN MOTIONS *IN LIMINE*

　　　　Defendants have filed 14 motions *in limine* and Plaintiff has filed three.  Oral argument on motions *in limine* is scheduled for **July 22, 2014 at 9:30 a.m.**[1]  The Court has determined that as to certain motions, oral argument will not assist the Court in deciding the matters.  The extensive briefing is sufficient to advise the Court and thus the Court will decide these motions, as set forth below, on the briefs and without a hearing.  *See* E.D. Mich. L. R. 7.1(f)(2).

　　　　For the reasons that follow, the Court:

　　　　DENIES Defendants' Motion *in Limine* to Exclude any Theory of Causation by Plaintiff Based on Speculation Concerning Decedent's Conduct (ECF No. 39; Response ECF No. 69; Reply ECF No. 78);

---

[1] On June 26, 2014, the parties contacted the Court requesting that the hearing originally scheduled for July 15, 2014 be adjourned due to attorney scheduling conflicts.  The Court has proposed July 22, 2014 at 9:30 a.m. as an alternative date and will issue a new Notice of Hearing upon receipt of confirmation from the parties as to the alternative date.

DENIES Defendants' Motion *in Limine* to Preclude Any Reference to Decedent Being "In Harm's Way" (ECF No. 55; Response ECF No. 64; Reply ECF No. 79);

GRANTS Plaintiff's Second Amended Motion *in Limine* to Exclude Portions of the Testimony of Defendants' Expert William Field (ECF No. 62; Response ECF No. 82);

DENIES AS MOOT Plaintiff's Amended Motion *in Limine* to Exclude Portions of the Testimony of Defendants' Expert William Field (ECF No. 31; Response ECF No. 36);

GRANTS Defendants' Motion *in Limine* to Exclude Evidence of Subsequent Remedial Measures (ECF No. 40; Response ECF No. 59; Reply ECF No. 75); and

GRANTS Plaintiff's Motion *in Limine* to Exclude Defendants' Proposed Exhibit 501, the UD-10 Traffic Crash Report. (ECF No. 56; Response ECF No. 81; Reply ECF No. 84.)

## I.    BACKGROUND

This wrongful death action arises out of an accident that occurred on a pig farm operated by the decedent, Randy Malburg. Defendant Brian Grate was driving a truck with a trailer carrying 300 feeder pigs for delivery to the Malburg farm. During the process of positioning the trailer for unloading, Randy Malburg became pinned at his head and neck between the trailer being driven by Mr. Grate and the chute attached to Mr. Malburg's barn, onto which the pigs were to have been unloaded. Plaintiff, the personal representative of decedent's estate, Kevin W. Malburg, brings this action on behalf of the estate.

In an Opinion and Order dated September 6, 2013, this Court denied Defendants' Motion for Summary Judgment. *Malburg v. Grate, et al.*, No. 11-14856, 2013 WL 4784436 (E.D. Mich. Sept. 6, 2013). The Court concluded that genuine issues of material fact remain as to whether Defendants breached a duty to the Plaintiff, whether Mr. Grate's alleged negligence was a proximate

cause of Randy Malburg's death, and whether Randy Malburg was more than 50% responsible for his own death. The facts of the case are set forth in detail in the Court's September 6, 2013 Opinion and Order and will be reiterated here only as necessary to provide context for the Court's rulings on these motions *in limine*.

## II. LEGAL STANDARD

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures-including motions in limine-in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991).

## III. ANALYSIS

### A. Defendants' Motion to Exclude any Theory of Causation by Plaintiff Based on Speculation Concerning Decedent's Conduct (ECF No. 39)

Defendants move to exclude any theory of causation that Plaintiff seeks to proffer that is based on alleged speculation about what Mr. Malburg may have been doing just prior to being crushed between the trailer and the chute. In particular, Defendants seek to preclude Plaintiff from arguing to the jury the theory that Mr. Malburg was reaching to secure the trailer rope to the cleat at the back of the trailer at the time of impact. In fact, because there were no eye witnesses to the accident (Mr. Malburg is dead and Mr. Grate could not see the space between the tractor and chute when he was behind the wheel of the truck), no one knows with absolute certainty what Mr. Malburg was doing in the seconds before his head and neck became pinned. But this lack of certainty does not require the Court to exclude competent testimony about what he might have been doing - as long

as that testimony is grounded to some extent in the evidence that has been adduced in the case. "That there was no eyewitness to the accident does not always prevent the making of a possible issue of fact for the jury." *Skinner v. Square D Co.*, 445 Mich. 153, 164 (1994) (internal quotation and citation omitted).

A claim of negligence may be based on circumstantial evidence but that evidence must suggest more than a mere possibility that is just as likely as other equally plausible possibilities. "To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Id.* at 164. "The proffered evidence must fairly indicate[] a logical sequence of cause and effect." *Id.* at 167-68 (internal quotation marks and citations omitted) (alteration added). In this case, although the inference may be tentative, Plaintiff "nevertheless has demonstrated a logical sequence of cause and effect which could support an inference" that Grate's "unreasonable conduct . . . caused the injury."

Defendants object to Plaintiff suggesting that its theory, i.e. that Mr. Malburg was crouched down and reaching to secure the rope to the cleat and that Mr. Grate should have known that this dangerous move was going to occur, has any greater support in the record than any other possible theory. Defendants propose, for example, that it is equally likely that Mr. Malburg intentionally placed his head between the chute and the trailer in a self-destructive act. Defendants concede that Plaintiff may attempt to establish causation based upon circumstantial evidence, but argue that the circumstances in evidence do not "take the case out of the realm of conjecture and within the field of legitimate inferences from established facts." Defs.' Reply at 1 (quoting *Cote v. Lowe's Home Ctr., Inc.*, 896 F. Supp. 2d 637, 647 (E.D. Mich. 2012)). Defendants assert in their motion that there is no evidence that Mr. Malburg had wrapped the rope around the cleat as part of the backing

4

process in the past or that he intended to do so on this occasion, but facts in evidence contradict this assertion. Among the evidentiary facts supporting an inference that Mr. Malburg had performed this maneuver in the past and that Mr. Grate would have known that Mr. Malburg was going to reach down to secure the rope to the cleat are the following:

> 1) Troy Kagy's testimony regarding the procedure for loading pigs at the Malburg farm suggests that when Mr. Malburg was going to raise the door while up inside the chute, he would signal the driver to slow while he secured the rope cleat and the driver would wait for further hand signals to finish the backing process:
>
>> Well, we pull up on the road and we back off on the blind side into the driveway. And we're squared up and we back approximately 50 feet from the road and we stop. And we get out and generally Mr. Malburg at that time would show up. We would talk. And he says I will go inside and he would stand in the chute and we would back up approximately within a couple feet of the chute. He would stop us with a wave of the hand. He would roll the door up and we would proceed after a motion of the hand to come back a couple of feet until he tells us to stop. And that was the procedure.
>
> Kagy Dep. 12. Kagy testified that the truck would be barely creeping back while Malburg raised the door and that while Mr. Malburg was out of sight during this process, he never completely lost sight of Mr. Malburg's hand directing him during the process. *Id*. at 23-24, 27-28, 33-34.
>
> 2) Various witnesses testified that in order to reach over to secure the rope cleat, Mr. Malburg would have been in a crouched position reaching outboard of the trailer, placing his head approximately in the area where he was found pinned, in order to secure the rope.
>
> 3) Mr. Grate's own testimony regarding his thoughts at the time that he lost sight of Mr. Malburg's hand, i.e. Mr. Grate presumed that Mr. Malburg drew his hand in to "hold the door rope:"
>
>> Just as he's waving me back and I put the truck in reverse, he - I started backing up, his arm came back in, you know, like he was - like okay, he knows I'm doing my job, now he needs to hold the door rope or, you know.
>
> 4) Mr. Grate's testimony that he wished he had insisted that the door be opened and secured before beginning the backing process on this occasion:

5

> Q: Was it your impression that you could safely open the back door of the truck prior to backing it up to the chute without the pigs running out?
>
> A: If you're close enough.
>
> Q: How about if you are as close as you were at the point in time when Mr. Malburg went up into the chute, would – is it your feeling that you could of safely opened the rear door and gotten the truck – had Mr. Malburg open the rear door and gotten the truck backed up to the chute without pigs running out?
>
> A: Yes.
>
> Q: Why didn't you insist on that?
>
> A: I wish I had of, but it was ultimately his – his call.

Grate Dep. 59.

5) Christopher Ott's testimony that it would be unreasonably dangerous to have Mr. Malburg dealing with the door rope during the backing process:

> Q: So typically what you would do under normal practice is back the truck up to a reasonable distance from the shoot [sic] where Randy could reach from the [chute] to the sorting board, truck driver would be out, the truck would be stopped, correct?
>
> A: Yes.
>
> Q: And then Randy would stand on the [chute], hold the sorting board with his right hand and hold his left hand above the top of the [chute] waving the truck back?
>
> A: Correct.
>
> Q: As to that rear door, how did that stay up?
>
> A: It's controlled with a rope, and the rope has an area where you can wind the rope around.
>
> Q: Like a nautical cleat?

> A: Like a nautical cleat, basically keep the door in any position.
>
> Q: So once the door was up and secured in that fashion by the truck driver, it couldn't come down on its own?
>
> A: Correct.
>
> Q: If you were present and the truck driver and maybe the farmer decided that as the truck was backing up to the [chute], Randy would somehow open the door, and secure the cleat as the truck is backing up, would you object to that?
>
> A: Yes, the way the [chute] is designed.
>
> Q: Okay. And if you were running the truck as you did on occasion, you'd say no, wait a minute, let me do that, correct?
>
> A: Correct.
>
>     \*    \*    \*
>
> Q: Is it reasonable, in your opinion, to expect somebody to do that maneuver [raise the door] if you're driving the truck as you're backing the truck up to a [chute] Randy Malburg's [chute]?
>
> A: I never said that Randy Malburg was raising the door. The truck driver raised the door while he was back there.
>     \*    \*    \*
> A: Close to the [chute], not up to it but close to the [chute].
>
> Q: Okay. And it would be – if you're driving the truck as the truck driver, it would be unreasonable to ask Randy to do that as he's backing – as you, the truck driver, is backing this thing up to the [chute], correct?
>
> A: Yes.

Ott Dep. at 33-34, 38. Mr. Ott also testified that it is impossible to raise and secure the door with one hand, *see* Ott Dep. at 38, and that Mr. Malburg, once up in the chute, would be holding the sorting board with one hand to keep the pigs on the truck until the truck came to a stop and the chute sides were inside the truck, *see* Ott Dep. at 32-33.

This evidence supports an inference that Mr. Grate, who was very familiar with the design of his trailer, knew that Mr. Malburg would be dealing with raising the door and securing the rope while the backing process was underway. Mr. Grate testified that he heard the door being raised after Mr. Malburg got up in the chute but before Mr. Grate actually began the final backing process. *See* Grate Dep. at 61. But he also testified that when Mr. Malburg's hand went out of his sight, Mr. Grate presumed that Mr. Malburg was "holding the door rope," suggesting that he was expecting that Mr. Malburg would still need to hold/secure the rope while the truck was moving. Mr. Grate testified that he chose not to insist that the door be opened and secured before the final backing process took place - but he wished that he had.

To be sure there is evidence in the record to contradict this theory and it will be appropriate for Defendants to explore these contradictions on vigorous cross examination. But *Skinner* only requires that there be enough evidence to suggest that Plaintiff's proffered scenario has a reasonable likelihood of probability rather than a mere possibility. 445 Mich. at 267. Plaintiff's evidence "need not negate all other possible causes" but must have greater than equal probability as compared with any other possible cause. Plaintiff's evidence on this theory suggests a reasonable inference of causation and is sufficient to permit the jury to determine whether it is possible that Mr. Malburg was attempting to secure the rope just before he became pinned between the trailer and the chute and that Mr. Grate was fully aware that he would be attempting this maneuver – a theory that the jury will be free to accept or reject as they consider all of the evidence ultimately presented. Accordingly, Defendants' motion *in limine* (ECF No. 39) to exclude Plaintiff from suggesting this theory of causation is DENIED.

> **B.** **Defendants' Motion to Preclude Reference to Decedent's Being "In Harm's Way" While Acting as a Spotter (ECF No. 55)**

Related to Defendants' motion to preclude Plaintiff from suggesting that Mr. Malburg was reaching to secure the rope to the cleat at the time he was crushed between the trailer and the chute is Defendants' motion to preclude reference to Mr. Malburg "being in harm's way while acting as a spotter." (ECF No. 55.) Defendants argue that it is pure conjecture to suggest that Mr. Grate should have known that Mr. Malburg would move from a "place of safety" standing up inside the chute to a place of danger, crouched and reaching to secure the door rope around the cleat. Defendants argue that because there is no evidence that Mr. Malburg told Mr. Grate that he intended to open the door while the truck was moving or that he would come between the trailer and the chute as he was trying to secure the rope, any suggestion that he did so is based on pure speculation. Defendants assert that Mr. Grate believed that the door was opened while the truck was still stationary but Mr. Grate's own testimony contradicts this, or at least leaves open the possibility that he was aware that the door had not been fully lifted, as he assumed that Mr. Malburg was dealing with the door rope when his hand disappeared.

As explained *supra*, there has been sufficient evidence presented to permit a jury reasonably to infer Plaintiff's suggested scenario. Furthermore, as discussed *supra*, there is sufficient evidence from which a jury might reasonably infer that Mr. Grate knew that Mr. Malburg would have to accomplish this task while the backing process was underway as he expressly testified that he assumed, when he lost sight of Mr. Malburg's hand, that Mr. Malburg was dealing with the door rope. This permits the reasonable inference that Mr. Grate presumed that the rope had not been finally raised and secured before he commenced his final backing toward the chute. Mr. Grate was also aware that the door had to be up in order for the truck to mesh with the chute. Also, as discussed *supra*, at least one witness familiar with the unloading process at the Malburg farm,

Christopher Ott, testified that this was an inherently dangerous process, particularly if the driver were to totally lose sight of Mr. Malburg, which Mr. Grate has testified occurred in this case. For the same reasons that the Court denies Defendants' motion to preclude Plaintiff from suggesting that Mr. Malburg may have been reaching to secure the door rope at the time he became pinned between the truck and the chute, the Court also denies Defendants' motion to preclude Plaintiff from suggesting that Mr. Grate knew or should have known that Mr. Malburg may have been doing just that when his hand disappeared from Mr. Grate's sight. Accordingly, the Court DENIES Defendants' Motion *in Limine* to Preclude Reference to Decedent Being "In Harm's Way" While Acting as a Spotter. (ECF No. 55.)

### C. Plaintiff's Amended Motion (ECF No. 31) and Second Amended Motion (ECF No. 62) to Exclude Portions of the Opinion Testimony of Defendants' Expert William Field, Ed.D

In his Amended Motion *in Limine*, Plaintiff sought to preclude four different subparts, a-d, of the opinion of Defendants' expert, Dr. William Field. (ECF No. 31.) In his Second Amended Motion (ECF No. 62), Plaintiff seeks to preclude only the opinion contained in the fourth subpart in which Dr. Field opines that Randy Malburg may have committed suicide by intentionally placing his head between the chute and the trailer as the backing process was underway. The Court agrees with Plaintiff that this theory has zero evidentiary basis and goes far beyond the realm of possibility into the world of pure conjecture. Dr. Field will be precluded from offering Randy Malburg's suicide as a possible theory of how his head came to be crushed between Defendants' trailer and the chute. Plaintiff's Second Amended Motion *in Limine* (ECF No. 62) is GRANTED. Plaintiff's Amended Motion *in Limine* is DENIED AS MOOT (ECF No. 31).

### D. Defendants' Motion *in Limine* to Exclude Evidence of Subsequent Remedial Measures (ECF No. 40)

Defendants ask the Court to exclude any evidence or reference to subsequent remedial measures implemented by Defendant Kagy Farms following the accident in this case. Fed. R. Evid. 407 provides that:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

Plaintiff does not deny that evidence that Kagy Farms, subsequent to the accident in this case, adopted a policy prohibiting their drivers from backing to a delivery chute unless the person taking delivery is visible on the ground, is not admissible to prove negligence. Defendants do not dispute, and do not intend to dispute at trial, that such a policy was feasible at the time of the accident. Plaintiff however insists that Defendants enter into a written stipulation, presumably to be read to the jury, acknowledging that such a safety procedure was feasible at the time of the accident. In support of the assertion that a stipulation is necessary to take the issue of feasability out of the case, Plaintiff cites a Seventh Circuit case, *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1185 (7th Cir. 1992), in which defendant did contest feasability. The Court is not bound by the decision of the Seventh Circuit which, in any event, the Court finds distinguishable. In *Ross*, it was clear that the defendant openly contested feasability. *Id*. at 1185. Given the Defendants' representation that they do not intend to dispute feasability, the Court sees no basis for requiring a stipulation to that

effect and GRANTS Defendants' motion *in limine* to exclude evidence of subsequent remedial measures. (ECF No. 40.)

### E. Plaintiff's Motion *in Limine* to Exclude Defendants' Proposed Exhibit 501, the UD-10 Traffic Crash Report (ECF No. 56)

Defendants' proposed Exhibit 501 is the UD-10 State of Michigan Traffic Crash Report that indicates on its face that it was created under the authority of and in compliance with Mich. Comp. Laws § 257.622. Pl.'s Mot. Ex. A, UD-10 Traffic Crash Report. Mich. Comp. Laws § 257.622 provides that an "officer receiving the report [of a driver of a motor vehicle involved in an accident that injures or kills any person] . . . shall immediately forward each report to the director of the department of state police on forms prescribed by the director of the department of state police." (Alteration added.) There is no question that the UD-10 Traffic Crash Report that Plaintiff seeks to exclude is a report prepared in compliance with Mich. Comp. Laws § 257.622.

Mich. Comp. Laws § 257.624 provides in pertinent part as follows:

> Sec. 624. (1) A report required by this chapter shall not be available for use in a court action, but a report shall be for the purpose of furnishing statistical information regarding the number and cause of accidents.

Mich. Comp. Laws § 257.624.

The Michigan Supreme Court has held that this statutory provision "is confined to the reports mandated by the statute, and has no effect on the rules of evidence regarding the police officer's personal notes or the routine report, usually entitled 'Motor Vehicle Accident Report,' that the officer takes at the scene of the accident." *Moncrief v. City of Detroit*, 398 Mich. 181, 191 (1976). Defendants suggest that the "report" referred to in section 624 is only the "verbal" report given to the investigating officer and is not the physical written report that appears on the official form as mandated by the statute. Defendants provide no authority for such a proposition. Defendants'

reliance on this Court's opinion in *Weinstein v. Siemens*, No. 07-cv-15000, 2010 WL 4824952 (E.D. Mich. Nov. 22, 2010) is misplaced. In that case, the reports being offered into evidence were not UD-10 Reports and did not appear on a "State of Michigan Traffic Crash Report" form, indicating on their face that they was prepared in compliance with Mich. Comp. Laws § 257.622. Quite the contrary, the reports in *Siemens* were the officers' narrative investigative reports and did not fall within the narrow category of the "red-line" reports statutorily mandated by section 622 and expressly barred from admission in a court proceeding by section 624. The report in this case, by contrast, is precisely the type of statutorily mandated report contemplated for exclusion under section 624. The statute does not say that the "verbal part" of the 622 report shall be excluded from evidence – it says the 622 report shall be excluded from evidence. And so it shall be. Apart from their own unsupported interpretation of the statute, Defendants' suggest no authority for separating from the UD-10 Report the driver's "verbal" report so that only some "portion" of the Traffic Crash Report would be excluded under section 624. Accordingly, the Court GRANTS Plaintiff's Motion *in Limine* to Exclude Defendants' Proposed Exhibit 501, the UD-10 Traffic Crash Report. (ECF No. 56.)

## IV.   CONCLUSION

For the foregoing reasons, the Court:

DENIES Defendants' Motion *in Limine* to Exclude any Theory of Causation by Plaintiff Based on Speculation Concerning Decedent's Conduct (ECF No. 39);

DENIES Defendants' Motion *in Limine* to Preclude Any Reference to Decedent Being in Harm's Way (ECF No. 55);

GRANTS Plaintiff's Second Amended Motion *in Limine* to Exclude Portions of the

Testimony of Defendants' Expert William Field (ECF No. 62);

DENIES AS MOOT Plaintiff's Amended Motion *in Limine* to Exclude Portions of the Testimony of Defendants' Expert William Field (ECF No. 31);

GRANTS Defendants' Motion *in Limine* to Exclude Evidence of Subsequent Remedial Measures (ECF No. 40); and

GRANTS Plaintiff's Motion *in Limine* to Exclude Defendants' Proposed Exhibit 501, the UD-10 Traffic Crash Report. (ECF No. 56.)

The Court will proceed to hear argument, as scheduled on **July 22, 2014 at 9:30 a.m.** on the following remaining motions *in limine*:

(1) Defendants' Motion *in Limine* to Exclude Certain Testimony of Plaintiff's Expert Lew Grill (ECF No. 28). In connection with this motion, the Court will also hear argument on (a) Defendants' Motion *in Limine* to Preclude Any Reference to Failure to Have Agreed Upon Hand Signals (ECF No. 61), (b) Defendants' Motion *in Limine* to Preclude Any Reference to Defendant Kagy Farm's Failure to Adopt a Policy Regarding Spotters (ECF No. 54), (c) Defendants' Motion *in Limine* to Exclude Plaintiff's Exhibit 115 (ECF No. 51) and (d) Defendants' Motion *in Limine* to Preclude Plaintiff From Introducing Evidence Relating to the Federal Motor Carrier Regulations (ECF No. 43). **Each side will be allowed a total of 30 minutes to argue all five of these motions**;

(2) Defendants' Motion *in Limine* to Exclude Certain Testimony of Plaintiff's Expert Thomas Green (ECF No. 29). **Each side will be allowed a total of 10 minutes to argue this motion**;

(3) Defendants' Motion *in Limine* to Preclude any Expert Testimony by Bader J. Cassin, M.D. (ECF No. 42), which shall be argued together with Defendants' Motion to Strike Plaintiff's Supplemental Expert Disclosures (ECF No. 60). **Each side will be allowed a total of 15 minutes to argue these two motions**;

(4) Defendants' Motion *in Limine* to Preclude any Evidence Concerning the Parties' Roles Which is Contrary to the Contract (ECF No. 52). **Each side will be allowed 10 minutes to argue this motion**;

(5) Defendants' Motion *in Limine* to Preclude Any Evidence Concerning Negligent Loading of the Trailer by Defendant Kagy Farms (ECF No. 53). **Each side will be

**allowed 10 minutes to argue this motion**.

IT IS SO ORDERED.

                                                        s/Paul D. Borman  
                                                        PAUL D. BORMAN  
                                                        UNITED STATES DISTRICT JUDGE

Dated: June 26, 2014

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 26, 2014.

                                                        s/Deborah Tofil  
                                                        Case Manager