UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN W. MALBURG, Personal
Representative of the Estate of                    Case No. 11-14856
RANDY WILLIAM MALBURG,
Deceased,

                     Plaintiff,                    Paul D. Borman
                                              United States District Judge

v.

BRIAN E. GRATE and KAGY
FARMS, LLC, jointly and severally,

                     Defendants.
_____/

OPINION AND ORDER REGARDING MOTIONS *IN LIMINE*

       Defendants have filed 14 motions *in limine* and Plaintiff has filed three. The Court previously issued an Opinion and Order resolving several of these *in limine* motions on the briefs.  (ECF No. 89, June 26, 2014 Opinion and Order.)  On July 22, 2014, the Court heard oral argument on the remaining motions *in limine* which are now addressed in this Order.  For the reasons that follow, the Court:

       GRANTS IN PART AND DENIES IN PART Defendants' Motion *in Limine* to Exclude Certain Testimony of Plaintiff's Expert Lew Grill (ECF No. 28);

       DENIES Defendants' Motion *in Limine* to Preclude Plaintiff From Introducing Evidence Relating to the Federal Motor Carrier Regulations (ECF No. 43);

       GRANTS IN PART AND DENIES IN PART Defendants' Motion *in Limine* to Preclude Any Reference to Failure to Have Agreed Upon Hand Signals (ECF No. 61);

1

GRANTS IN PART AND DENIES IN PART Defendants' Motion *in Limine* to Preclude Any Reference to Defendant Kagy Farm's Failure to Adopt a Policy Regarding Spotters (ECF No. 54);

GRANTS IN PART AND DENIES IN PART Defendants' Motion *in Limine* to Exclude Certain Testimony of Plaintiff's Expert Thomas Green (ECF No. 29);

DENIES Defendants' Motion *in Limine* to Exclude Plaintiff's Exhibit 115 (ECF No. 51);

GRANTS Defendants' Motion *in Limine* to Preclude Any Evidence Concerning Negligent Loading of the Trailer by Defendant Kagy Farms (ECF No. 53);

DENIES Defendants' Motion to Strike Plaintiff's Supplemental Expert Disclosures (ECF No. 60);

GRANTS IN PART AND DENIES IN PART Defendants' Motion *in Limine* to Preclude any Expert Testimony by Bader J. Cassin, M.D. (ECF No. 42); and

DENIES Defendants' Motion *in Limine* to Preclude any Evidence Concerning the Parties' Roles Which is Contrary to the Contract (ECF No. 52).

## I.       BACKGROUND

This wrongful death action arises out of an accident that occurred on a pig farm operated by the decedent, Randy Malburg.  Defendant Brian Grate was driving a truck with a trailer carrying 300 feeder pigs for delivery to the Malburg farm.  During the process of positioning the trailer for unloading, Randy Malburg died after becoming pinned at his head and neck between the trailer being driven by Mr. Grate and the chute attached to Mr. Malburg's barn, onto which the pigs were to have been unloaded.  Plaintiff Kevin Malburg, the personal representative of decedent's estate, brings this action on behalf of the estate.

2

In an Opinion and Order dated September 6, 2013, this Court denied Defendants' Motion for Summary Judgment. *Malburg v. Grate, et al.*, No. 11-14856, 2013 WL 4784436 (E.D. Mich. Sept. 6, 2013). The Court concluded that genuine issues of material fact remain as to whether Defendants breached a duty to the Plaintiff, whether Mr. Grate's alleged negligence was a proximate cause of Randy Malburg's death, and whether Randy Malburg was more than 50% responsible for his own death. The facts of the case are set forth in detail in the Court's September 6, 2013 Opinion and Order and will be reiterated here only as necessary to provide context for the Court's rulings on these motions *in limine*.

## II.    LEGAL STANDARD

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures-including motions in limine-in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991).

## III.   ANALYSIS

**A.    Defendants' Motion to Exclude Testimony of Plaintiff's Expert Lew Grill (ECF No. 28) Which Necessarily Includes Resolution of (1) Defendants' Motion to Preclude Plaintiff From Introducing Evidence Relating to the FMCSRs - ECF No. 43), (2) Defendants' Motion to Preclude Reference to Failure to Have Hand Signals (ECF No. 61), and (3) Defendants' Motion to Preclude Reference to Kagy Farm's Failure to Have a Spotter Policy (ECF No. 54).**

"Admissibility of expert testimony is governed by Federal Rule of Evidence 702 and informed by the seminal case applying Rule 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *In re Southeastern Milk Antitrust*

3

*Litigation*, 739 F.3d 262, 267 (6th Cir. 2014).   Fed. R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"[T]he rules of evidence - especially Rule 702 - do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).   The trial court's "gatekeeping" task with respect to expert testimony applies not just to scientific evidence, as was at issue in *Daubert*, but to all types of specialized knowledge presented through an expert witness. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-49 (1999).   ""[T]he relevant reliability concern may focus upon personal knowledge or experience . . . [as] there are many different kinds of experts, and many different kinds of expertise." *Id*. at 150.   The Court must analyze separately the proposed expert's qualification, reliability and helpfulness.   The Sixth Circuit has noted that absolute certainty is not required of an expert but that sheer speculation, regardless of the qualifications of the speculator, lacks sufficient reliability:

> Rule 702, we recognize, does not require anything approaching absolute certainty. *See Daubert*, 509 U.S. at 590, 113 S.Ct. 2786. And where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line. *See [General Elec. Co. v.] Joiner*, 522 U.S. [136] at 139, 118 S.Ct. 512 [(1997)]. Yet, so long as there is a line, some forms of testimony may cross it, and that happened here. Dr. Carlini's opinion

4

> contains not just one speculation but a string of them: A suggests by analogy the possibility of B, which might also apply to C, which, if we speculate about D, could eventually trigger E, so perhaps that happened here. At some point, the train becomes too long to pull and the couplings too weak to hold the cars together.

*Tamraz v. Lincoln Elec. Co*., 620 F.3d 665, 671-72 (6th Cir. 2010).

To determine the testimony's reliability, the court does not "determine whether [the opinion] is correct, but rather [determines] whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig*., 527 F.3d 517, 529–30 (6th Cir. 2008). "As gatekeeper, the trial court only determines the admissibility of expert evidence; the jury determines its weight. The court's focus is 'solely on principles and methodology, not on the conclusions that they generate.'" *United States v. Stafford*, 721 F.3d 380, 393-94 (6th Cir. 2013) (quoting *Daubert*, 509 U.S. at 595) (alterations in original). "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal*, 527 F.3d at 530.

At the final pre-trial conference, both parties indicated to the Court that were no real *Daubert* issues with respect to the parties' proposed experts. Notwithstanding those representations, several motions have been filed attacking proposed expert testimony as inadmissible. In this motion, Defendants challenge certain opinions of Plaintiff's expert Lew Grill. Defendants do not challenge Mr. Grill's qualifications to testify as an expert on trucking policies and procedures but seek to exclude five of his seven opinions.

**1.      Mr. Grill's first and second opinions – that the Federal Motor Carrier Safety Regulations ("FMCSRs") apply to Defendants and do not apply to Randy Malburg.**

Defendants argue that Mr. Grill's opinion regarding the applicability of the FMCSRs constitutes a "legal opinion" not the proper subject of expert testimony. Plaintiff asserts that Kagy Farms is registered with the Department of Transportation and has a USDOT registration number.

5

These are factual allegations.  Plaintiff further asserts that the FMCSRs apply to interstate motor carriers with USDOT registrations.  Defendants do not deny that the FMCSRs apply to them and did not apply to Randy Malburg, a pig farmer, but apparently object to Grill saying as much in the context of his opinions.

Prior to addressing Grill's proposed opinions that touch on these matters, the Court must address Defendants' related motion to preclude any reference at all to the FMCSRs as irrelevant to this case.  (ECF No. 43.)  Mr. Grill proposes to discuss three separate FMCSRs:

(1) 49 C.F.R. § 383.110:

> All drivers of CMV's must have the knowledge and skills necessary to operate a CMV safely as contained in this subpart.  The specific types of items that a State must include in the knowledge and skills tests that it administers to CDL applicants are included in this subpart.

(2) 49 C.F.R. § 383.111:

> (a) All CMV operators must have knowledge of the following 20 general areas:
> *                     *                     *
> (4)  Basic control.   The proper procedures for performing various basic maneuvers, including:
>
> > (iii) Backing in a straight line[.]

(3) 49 C.F.R. § 383.113:

> (b)   Basic vehicle control skills.  All applicants for a CDL must possess and demonstrate the following basic motor vehicle control skills for the vehicle class that the driver operates or expects to operate:
> *                     *                     *
> (4) Ability to back the motor vehicle in a straight line, and check path and clearance while backing[.]

Relying on *Espinal v. Wright*, No. 09-cv-861, 2012 WL 864783 (W.D. Ky. March 13, 2012), Defendants argue that the FMCSRs are irrelevant and inadmissable to prove negligence *per se* based

upon an alleged violation of a particular FMCSR. The Court agrees that evidence that Defendants

had violated one or more FMCSRs would not be admissible to prove negligence *per se*. However,

as the court in *Espinal* observed, Grate's knowledge of the FMCSRs, and his alleged failure to apply

that knowledge in the circumstances of this case, "will, of course, be relevant to the jury's

determination on the ultimate issue of [Grate's] negligence." *Id*. at *3 n. 1. In *Espinal*, it had

already been established that the driver was aware of each of the areas of knowledge contained in

the FMCSRs relevant to that case and thus there was "no material dispute of fact that Wright was

knowledgeable about the general areas of required knowledge laid out in [the FMCSRs.]" *Id*. at *3.

And, as the court there recognized, his failure to adequately apply that knowledge to the incident in

question was "of course" relevant to the issue of negligence. Thus, *Espinal* does not stand for the

proposition that the FMCSRs are irrelevant or inadmissible generally, only that an alleged violation

of them cannot be offered as evidence of negligence *per se*. *See, e.g., Sanderson v. Cahill Const.

Co*., No. 294939, 2011 WL 1262141, at *4 (Mich. App. April 5, 2011) (citing *Zalut v. Andersen

& Assoc, Inc.*, 186 Mich. App 229, 235–36 (1990)) (holding that "OSHA and MIOSHA violations

may supply evidence of negligence, but do not constitute negligence per se").

    The FMCSRs state on their face that they apply to every person who operates a commercial

motor vehicle. 49 C.F.R. § 383.3. The Court rejects Defendants' contention that these regulations

only apply when a driver is *applying* for a CDL. The Court rejects Defendants' suggestion that after

obtaining a CDL, the driver is free to forget the regulations or that somehow they no longer govern

the driver's conduct while operating a commercial vehicle. That of course is not the case and

*Espinal* makes clear that the FMCSRs continue to be relevant to the question of whether a particular

driver actually applied his or her knowledge of the FMCSRs in the operation of a commercial

vehicle in a particular case.  Plaintiff may present the relevant FMCSRs through Mr. Grill as this will assist the jury in understanding the standard of care in the trucking industry, an area with which they may not be familiar.  Mr. Grill may not offer his interpretation of these regulations or expound on what they may require beyond what they state on their face.  Plaintiff may examine Mr. Grate about his knowledge of those FMCSRs and question him about his application of that knowledge on the date of the incident on the Malburg Farm.

That the FMCSRs may be relevant and admissible on the issue of the standard of care does not mean that Mr. Grill can express to the jury the ultimate legal conclusion that Mr. Grate was negligent in violating those regulations.  *See Torres v. County of Oakland*, 758 F.2d 147, 150-51 (6th Cir. 1985) (noting that expert testimony is not objectionable simply because it touches on the ultimate issue to be decided, but expert cannot express his opinion in legal terms that have special significance under the law); *Berry v. City of Detroit*, 25. F.3d 1342, 1353-54 (6th Cir. 1994) (noting that while expert's opinion may embrace an ultimate issue to be decided in the case, the issue must be factual, not legal, and concluding that expert could opine that certain conduct was lax and that such conduct could have certain results but could not opine that the conduct amounted to deliberate indifference).  *See also Nicholson v. McCabe*, No. 02-1107, 2003 WL 25676476, at *1 n. 2 (N.D. Ala. July 18, 2003) (precluding expert testimony that defendant "violated" the FMCSRs but finding the FMCSRs themselves admissible safety standards relevant to the standard of care in the industry); *Rolick v. Collins Pine Co*., 975 F.2d 1009, 1013-14 (3d Cir. 1992) (finding it was error to exclude OSHA regulations which were relevant to show industry standard of care);  *McGarity v. FM Carriers, Inc.*, No. CV410-130, 2012 WL 1028593, at *5 (S.D. Ga. March 26, 2012) (permitting

plaintiff's expert to testify regarding the FMCSRs).[1]

Defendants make the same motion with regard to the Commercial Drivers License ("CDL") Manual, which Grill also relies on for portions of his opinion and the Court reaches the same conclusion, based upon similar reasoning. The case on which Defendants' rely to support their argument for exclusion of any mention of the CDL Manual, in addition to being unpublished, is inapt. In *Holmes v. Bauer*, No. 235573, 2003 WL 211088469 (Mich. Ct. App. May 15, 2003) (unpublished), the court held that the CDL Manual did not "contain[] enforceable rules or regulations, the violation of which constitutes evidence of negligence." *Id*. at *2. As discussed *supra*, the Court does not intend to permit Mr. Grill to opine that a violation of any regulation or rule amounts to negligence *per se*. Importantly, the court in *Holmes* did not exclude reference to the CDL Manual altogether, holding that the content of the Manual could be used for purposes of impeachment and that the defendant was "free to reference the content of the manual and inquire about specific manual guidelines" on cross-examination. *Id*. at *3.

Plaintiff will be precluded from suggesting that Grate was not qualified to obtain his CDL but will be free to establish the knowledge that he was expected to possess, as defined by both the FMCSRs and the CDL Manual, while operating his commercial vehicle. Accordingly, the Court

---

[1] The two cases relied upon by Defendants are (1) not controlling and (2) not persuasive in any event. In *Chesler v. Trinity Ind., Inc.*, No. 99C3234, 2002 WL 1822918 (N.D. Ill. Aug. 8, 2002), the court held that a truck driver witness "may not testify as to the Federal Motor Carrier Safety Regulations or to her opinion as to whether Beaty violated any of those regulations." *Id*. at *6. (ECF No. 43, Defs.' Mot. at 8.) The court gave no further explanation for its ruling, which may have been based on the witnesses' qualifications or any one of a number of other bases. The court did not opine as to the relevance of the FMCSRs generally on the standard of care. In *Reagan v. McCoy*, No. 10-cv-03016, 2011 U.S.Dist. LEXIS 79240 (W.D. Ark. July 20, 2011), the court precluded "any statement to the effect that Roger Reagan failed to comply with the Federal Motor Carrier Safety Regulations." *Id*. at *2-3. No further context is given for this ruling in *Reagan* and thus the case is unhelpful as well as unpublished and not binding.

DENIES Defendants' motion to exclude Mr. Grill's 1st and 2nd opinions and DENIES Defendants'

Motion to Preclude Plaintiff From Introducing Evidence Related to the FMCSRs (ECF No. 43).

> **2.** **Grill's third opinion – that the Defendants knew that the procedure they were using for backing their truck at the time of this incident was dangerous and likely to cause harm to others.**

Mr. Grill cannot speculate regarding the state of mind of any person – he cannot opine about

what anyone "knew" or "believed." He can, however, rely on and cite to their deposition testimony

as having formed the basis for his own opinions but he must bring something to bear on the subject

from his point of expertise - he cannot simply summarize testimony. Grill can observe what any of

the witnesses said in their depositions if he relied on their testimony in reaching his conclusions but

cannot interpret that testimony to conclude that therefore they possessed a certain state of mind.

Although Grill cannot testify regarding their state of mind, if based on his expertise, he is "entitled

to opine about the reasonableness of [a] witness's actions in light of their admitted testimony." *Finn*

*v. Warren County, Ky.*, No. 10-cv-00016, 2012 WL 3067376, at *4 (W.D. Ky. July 27, 2012).

> **3.** **Grill's fourth opinion – that Mr. Grate should not have backed his truck without having a spotter to keep him informed about the area directly behind the truck as he is backing up.**

Mr. Grill's fourth opinion is that Mr. Grate should have insisted on a spotter and should have

arranged more detailed hand signals with Mr. Malburg before beginning the final backing process.

Deciding this issue requires first deciding two related motions: (a) Defendants' Motion *in Limine*

to Exclude Reference to Any Failure to Have Agreed Hand Signals (ECF No. 61); and (b)

Defendants' Motion *in Limine* to Preclude Any Reference to Defendant Kagy Farms' Failure to

Adopt a Policy Regarding Spotters (ECF No. 54).

**a. Defendants' Motion** *in Limine* **to Preclude any Reference to Failure to Have Agreed Hand Signals (ECF No. 61).**   In this motion, Defendants argue that Plaintiff should not be permitted to introduce expert testimony expressing the opinion that Mr. Grate and Mr. Malburg did not have agreed upon hand signals, and that Mr. Grate was negligent for failing to adequately arrange these signals before proceeding with the backing process.  Other than reiterating to the jury what Grate stated in his deposition about his conversation with Randy Malburg, i.e. that Grate should  "watch for [Malburg's] hand to signal [Grate] back," Grate Dep. 57, Grill has no experience that renders him any more competent to determine what was agreed upon than the jury.  Under the facts presented, there is no expert testimony required to interpret the meaning of Mr. Malburg's hand disappearing from Mr. Grate's view.  To the extent that the applicable standard of care requires the use of hand signals, this is a fair subject for Mr. Grill's testimony.  As to the nature of the conversation between Mr. Grate and Mr. Malburg regarding the use of hand signals that day, Mr. Grill was not a party to those conversations and has no basis to speculate on those conversations beyond what Mr. Grate testifies was said between them.

**b. Defendants' Motion to Exclude Reference to Kagy Failing to Have a Spotter Policy. (ECF No. 54.)**  As to Kagy's failure to have a particular "spotter policy" in place, no evidence has been proposed that would support the opinion that the standard of care required that Kagy have a defined "spotter policy" to which its drivers were required to adhere.  Mr. Grill will be permitted to testify regarding the FMCSRs and the CDL Manual content regarding backing safety procedures and as to what Mr. Grate was expected to know about backing safety procedures based on those regulations.  He can give his opinion, if supported by the evidence ultimately admitted as to the standard of care, that Mr. Grate should have used a third person spotter if one was available to him

11

but he cannot state that it would have been reasonable to have insisted that Mr. Malburg's brother

stay and act as a spotter.  The jury is just as capable as Mr. Grill of reaching or rejecting this

conclusion.  Grill will not be precluded from giving his opinion based on his experience and

knowledge of the industry standards, and applying those to the facts of this case, that when Mr.

Malburg withdrew his hand from Mr. Grate's sight, he ceased acting as a spotter.  Defendants will

be able to cross-examine Mr. Grill on the sufficiency of having enlisted Randy Malburg himself to

act as a spotter.

> **4.      Mr. Grill's fifth opinion – that Defendants should have loaded the trailer in a manner that would not have required Randy Malburg to be standing in the chute, out of sight, behind the trailer while backing.**

The Court GRANTS Defendants' motion to exclude this portion of Mr. Grill's testimony for

the reasons discussed *infra* at section IIIC.  In any event, Mr. Grill has no special expertise in the

loading of livestock trucks that qualifies him to give an expert opinion on this matter.  Several fact

witnesses possess greater familiarity with the trailer and the chute on the Malburg Farm and have

testified about the feasability of having loaded the trailer in a manner that would not have required

Mr. Malburg to be up in the chute.  Mr. Grill brings no special expertise to this issue and his opinion

that the trailer should have been loaded differently will be excluded.

> **B.      Defendants' Motion *in Limine* to Exclude Certain Testimony of Plaintiff's Expert Thomas Green (ECF No. 29) and Defendants' Motion *in Limine* to Preclude Plaintiff's Exhibit 115 (ECF No. 51).**

Defendants concede that Mr. Green is qualified as an expert in accident reconstruction but

object to his opinions 2, 3, 4-7 and 10.  The Court DENIES the motion as to opinions 2 and 3 which

merely summarize the background testimony on which Green relies in forming his opinion regarding

what Mr. Grate could see in his side view mirror and his opinion that the design of the chute

required Mr. Malburg to open the door of the trailer when the trailer was very close to the chute.

Defendants also seek to preclude Mr. Green's opinions 4-6 that discuss certain trucking safety practices and procedures.  In connection with this motion, the Defendants also seek to preclude Plaintiff from introducing proposed Exhibit 115 ("Vehicle Backing Policy).  Defendants argue that Plaintiff never disclosed this "Vehicle Backing Policy," which is actually comprised of vehicle backing policies that are excerpted from two different sources: (1) The Keller Tractor-Trailer Driving Manual and (2) The Tractor Trailer Driver Handbook by Alice Adams.  (ECF No. 57, Pl.'s Resp. Exs. A, B.)  First, Defendants argue that neither of these sources was identified by either of Plaintiff's experts, Grill or Green, in their expert reports.  In fact, Green's report lists both as having been reviewed to assist in his analysis of the accident.  (ECF No. 51, Defs.' Mot. to Exclude 115, Ex. C, July 19, 2012 Report of Thomas E. Green, p. 5, ¶ 10.)  Additionally, Defendants examined Green at his deposition specifically about his review of and reliance on the Keller and Adams materials to support his opinions.  (Defs.' Mot. to Exclude 115, Ex. E, Dec. 7, 2012 Deposition of Thomas E. Green at 59-62.)

The parties entered into a stipulation on May 6, 2014 that "learned treatises, which includes truck driving manuals, described in the Amended Joint Final Pretrial Order," shall not be admitted into evidence.  (ECF No. 70 ¶ 3.)  The Stipulation then provides that "any use of learned treatises shall comply with the requirements of FRE 803(18)."  *Id.*  Fed. R. Evid. 803(18) excepts from the hearsay rule a statement contained in a learned treatise if the statement is relied on by the expert on direct or brought to his attention on cross examination and the publication is reliable.  Rule 803(18) further provides that the statement may be read into evidence but not received as an exhibit.  The parties indicated to the Court at the hearing on the motions *in limine* that they have agreed that, if

13

the Court permits Mr. Green to testify concerning trucking policies and procedures, the Keller and Adams materials may be introduced through Mr. Green and Mr. Green will be permitted to testify concerning the contents of those materials, but the materials themselves will not be marked as an exhibit or presented to the jury.

When asked by Defendant's counsel at his deposition to identify his understanding of what he was retained to do in this case, Mr. Green identified two tasks: 1) to investigate the collision and provide opinions about how the collision occurred ("accident reconstruction") and 2) to comment on the actions of Mr. Grate in terms of how he backed his trailer ("trucking policies and procedures"). (Green Dep. 13-14.) Defendants do not question Mr. Green's qualifications to render opinions in this action on the subject of accident reconstruction. Defendants do argue, however, that he is not qualified to testify concerning trucking practices and procedures, despite the fact that nearly 24 pages of Mr. Green's deposition is devoted to examining him on his background and experience related to analyzing truck driver actions and trucking practices and procedures. (Green Dep. 14-28, 59-69.) The Court concludes that although Mr. Green may not be the most highly qualified and knowledgeable individual on the subject of trucking policies and procedures, his experience and knowledge is sufficient to render his proffered testimony on the subject helpful to the jury. *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 446 (6th Cir. 2012) ("An expert's lack of experience in a particular subject matter does not render him unqualified so long as his general knowledge in the field can assist the trier of fact."). Plaintiff need only put forth an expert who meets the "minimal qualifications" requirement of Rule 702, "not one who could teach a graduate seminar on the subject." *Burgett v. Troy-Bilt LLC*, __F. App'x__, 2014 WL 4290109, at *5 (6th Cir. Sept. 2, 2014).

14

Mr. Green has a degree in biomechanical engineering and much of his experience and knowledge relates to the mechanical aspects of reconstructing vehicle collisions. However, in the course of his training and experience, he has also acquired a significant amount knowledge specifically regarding trucking practices and procedures and has testified on multiple occasions on the subject of truck driver actions in the course of reconstructing accidents. To summarize, his training and experience includes the following:

- Testimony relating to truck driver conduct in at least six actions (Green Dep. 16-19);
- Week-long intensive tractor-trailer training course, which included demonstrating skill at backing a tractor-trailer to a simulated loading dock, at the conclusion of which Green received his CDL (Green Dep. 21-22, 28-29);
- DOT safety compliance seminar (several day course) that dealt specifically with the FMCSRs and the application of the FMCSRs to tractor-trailer drivers (Green Dep. 24-25);
- Successful completion of the written test to receive a CDL permit, which required knowledge of the CDL requirements and the FMCSRs (Green Dep. 26-27);
- Commercial Vehicle Accidents Course (week long), about 25% if which was devoted to talking about the FMCSRs (Green Dep. 27);
- Study of several tractor-trailer driving training manuals and CDL Manuals in preparation for obtaining his CDL (Green Dep. 59).

Each of these was listed on Green's CV and Defendants examined Green on these credentials at length in his deposition.

While Green may not have the wealth of experience that Grill brings to bear on this action, his training and experience on the subject of truck driver safety procedures is sufficient to render him qualified to offer the limited opinions he has proffered and to discuss the materials on which he relied in reaching those conclusions, including the Keller and Adams materials presented in Exhibit 115. "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal*, 527 F.3d at 530. The engine of cross-examination will provide Defendants the opportunity to test Mr. Green on his opinions on this subject and the jury will give his testimony the weight it

deems it deserves after hearing all of the evidence.  Accordingly, the Court DENIES Defendants'

motion to exclude Mr. Green's opinions 4-6 and DENIES Defendants' motion to exclude Exhibit

115.  Exhibit 115 may be introduced through Mr. Green but will not be marked as an exhibit or

given to the jury.          For reasons discussed *infra* at section IIIC, the Court will exclude Mr. Green's

7th opinion that the trailer could have been loaded with the bottom side pen empty so that Mr.

Malburg could have acted as a spotter from the ground.  In any event, as Plaintiff's counsel

conceded at the hearing on the motions *in limine*, Mr. Green has little to add to the fact witness

testimony on this issue based upon his area of expertise.

Finally, with regard to Green's 10th opinion that the sun may have been a factor, the parties

submitted supplemental briefing on this issue that demonstrates that Green did in fact indicate that

he was provided the deposition of Jeffrey White, the first responder to the scene of the accident, who

testified that Mr. Grate expressed to him that he couldn't see in his mirror because the sun was in

his eyes.  (Green Rep. 1, ¶ 18; Pl.'s Supp. Br. Ex. 1, April 9, 2012 Deposition of Jeffrey White.)

Although Mr. Green does not specifically mention Mr. White's testimony in the text of his report,

he does list the White deposition as information he was "provided" to assist in his analysis.  Mr.

Green offers the opinion, based upon his experience as an accident reconstructionist, that if the sun

was blocking his vision, Mr. Grate should have stopped his truck immediately.  Mr. White's

testimony need not be independently admissible for the truth of the matter asserted in order for Mr.

Green to testify to his statements.  If the testimony was reviewed by Green and formed the basis for

his opinions, Mr. Green is permitted to testify about those facts to explain how he came to his

opinion.  *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728-29 (6th Cir. 1994).  If the

evidence is not independently admissible, a limiting instruction to the jury that the testimony is to

16

be considered "solely as a basis for the expert's testimony and not as substantive evidence," may be appropriate. *Id*. at 729. Because this issue was not briefed before the hearing, the Court will hold off ruling on this motion until Mr. Green is examined at trial to see if in fact he did rely on Mr. White's testimony in reaching his opinions and whether or not Mr. White's testimony as to what Mr. Grate said to him on the day of the incident would be independently admissible under some other rule of evidence.

### C.     Defendants' Motion to Preclude Evidence Regarding Negligent Loading of the Trailer (ECF No. 53)

Defendants argue that Plaintiff should be precluded from arguing that Defendants should have loaded the truck differently, leaving the bottom pen, which marries with the Malburg chute, empty of pigs when loading the feeder pigs for delivery to the Malburg farm. Defendants argue that this theory is based on pure speculation and should be excluded under Fed. R. Evid. 402, relying on the principles of causation set forth in *Skinner v. Square D Co*., 445 Mich. 153 (1994).

Defendants assert in their motion that "Kagy Farms neither loaded the trailer nor was responsible for loading the trailer." Defs.' Mot. 1, 4, 9. In fact, however, Mr. Grate, Kagy's employee, testified that he did directly assist in the loading of the pigs onto his truck for delivery to the Malburg farm on the occasion of the accident in this case. Grate Dep. 36-37. Contrary to Defendants' suggestion, he did not just pull his truck up and passively allow the pigs to be loaded on his trailer. Mr. Grate also testified that the truck was not full that day - that the truck can hold approximately 500 feeder pigs and he estimated that there were fewer than 300 feeder pigs on the truck that day. Grate Dep. 40-41. In response to the question whether on a delivery to a chute configured like the Malburg's it would have been possible to leave the driver's side rear pen empty, Mr. Grate responded: "You could of." Grate Dep. 41. Christopher Ott also testified that, assuming

17

space enough on the truck to spread the pigs out for safety and comfort reasons, it would be possible to leave the pen on the side lower level empty so that you could back up to the chute on the Malburg farm without fear of the pigs escaping and thus without the necessity of having someone in the chute.  Ott Dep. 25-26.

The inference however from the fact that it *could* have been loaded differently to the conclusion that Mr. Grate *should* have insisted on it that day requires too much speculation to permit this theory to be presented to the jury.  The evidence demonstrates that Kagy had not delivered pigs to the Malburg farm for several months prior to the delivery the day of the accident.  There is also evidence that it had been suggested to Randy Malburg that he modify the chute to allow for a more standard delivery.  There is no evidence that Mr. Grate knew how he would find the Malburg chute that day or that he knew at the time that the pigs were loaded onto the trailer that Mr. Malburg would be alone that day and would have to climb up in the chute and act as his own spotter on that particular day.  Because Plaintiffs have failed to establish that the standard of care required Mr. Grate to load the trailer that day with the bottom pen empty, testimony regarding this issue is not relevant and, even if marginally relevant, would have a tendency to mislead and confuse the jury.  Accordingly, the Court GRANTS Defendants' Motion to Preclude Any Evidence Concerning Negligent Loading of the Trailer (ECF No. 53).

### D.   Defendants' Motion to Preclude Testimony By Plaintiff's Expert Bader Cassin MD (ECF No. 42) and Defendants' Motion to Strike Plaintiff's Supplemental Expert Disclosures (ECF No. 60)

Defendants move to exclude the testimony of Plaintiff's autopsy expert, Bader Cassin, pursuant to Fed. R. Civ. P. 26(a)(2), because Plaintiff never disclosed Cassin as an expert witness and never filed his expert report.  Plaintiff responds that Cassin is a hybrid expert, that he is

18

testifying as a fact witness relative to his autopsy on Randy Malburg and his conclusions about the body and sources of injury and bleeding based upon his examination of the body. (Cassin Dep. 40-41.) The subject of Cassin's testimonial role was discussed at length at Cassin's deposition on August 9, 2012, and at that time Plaintiff's counsel explained that Cassin was testifying as a hybrid witness, testifying only "as a forensic pathologist." *Id*. Defendants' counsel examined Cassin at length about his possible opinions and conclusions based on his autopsy of the decedent.

On March 11, 2014, Plaintiff filed supplemental expert disclosures with respect to Dr. Cassin, stating that his opinions are those set forth in his deposition. Defendants now move to strike Plaintiff's supplemental disclosures. (ECF No. 60, Defs.' Mot. to Strike Ex. H.) Plaintiff represents that Cassin will not testify to any opinion or fact beyond those set forth in his deposition. Importantly, Defendants' expert Jennifer Yaek, reviewed Cassin's deposition and discusses his conclusions at length in her expert report.

Defendants have no claim of surprise as to the content of Cassin's opinions but Defendants do have a good argument that some of his opinions go beyond the scope of his role as a forensic pathologist and, to this extent, should be excluded. *See Hinkle v. Ford Motor Co*., No. 11-24-DCR, 2013 WL 1992834 (W.D. Ky. May 13, 2013) (finding that a treating physician need not file an expert report but will be limited to testifying within the scope of his diagnosis and treatment). To the extent that it was not within the scope of Cassin's role as the forensic pathologist who performed Plaintiff's autopsy to determine the facts to which he testified in his deposition or the opinions he expressed, he is precluded from offering such testimony at trial. He is precluded from amplifying his autopsy conclusions based upon materials, such as photographs of the scene that he examined *after* he performed his autopsy and reached his professional conclusions. Because Cassin was not

19

identified as an expert and never filed an expert report, to the extent his opinions were not integral to determining the cause and manner of death, he is precluded from offering them. *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870-71 (6th Cir. 2007) (holding that treating physicians need not file expert reports when their testimony is limited to "core issues" pertaining to treatment). Cassin will be limited to testifying regarding the contents of his autopsy report.

### E.   Defendants' Motion to Preclude Any Evidence Concerning the Parties' Roles Which is Contrary to the "Contract"

In this motion, Defendants argue that there was an oral contract, or a contract established through a course of conduct, between Kagy and Randy Malburg that dictated that Randy Malburg was in charge of the operation of unloading the pigs the moment that Grate arrived at the Malburg farm. Defendants assert that "Grate's role pursuant to the contract was to deliver pigs according to the procedure directed by Mr. Malburg." (ECF No. 52 at 9.) They suggest that the moment Grate arrived at the Malburg farm, he became a loaned servant of Malburg's and was under Malburg's complete control. Defendants argue that Grate was required to follow Malburg's instructions at all costs and had no ability to make independent decisions, including regarding how he drove his truck, once he drove onto the Malburg farm.

There is a contract of sorts (not written) between Kagy and non-party Archbold Elevators. The Court rejects Defendants' suggestion that this "contract" somehow defined Mr. Grate's obligations and duties on the Malburg farm and dictated that he follow Mr. Malburg's directions when delivering pigs to the Malburg farm. Defendants argue that even if this "contract" is not controlling, there was a course of conduct that established the same roles and duties of the parties and precluded Mr. Grate from doing anything differently on the date of the accident. "The 'role' of the Kagy Farms' driver was to follow the directions given by Mr. Malburg." (ECF No. 52 at 11.)

20

The loaned servant doctrine that Defendants suggest applies states that if Mr. Grate was still doing the work of his original master, i.e. Kagy Farms, he is not the loaned servant of Mr. Malburg. *Rockwell v. Grand Trunk Western Ry. Co*., 264 Mich. 626, 634 (1933).   Just because an employee is following the directions of another master does not make him that person's servant if he is still acting within the employ of his original master.  *Standard Oil Co. v. Odgen & Moffett Co.*, 242 F.2d 287 (6th Cir. 1957).  There is no question that Mr. Grate was still actively operating the Kagy Farms truck at the time of this accident. The unloading of goods had not even begun and there is no place for application of the loaned servant doctrine here.  The Court DENIES this motion.  Defendants will be precluded from arguing (1) that there was an oral contract that determined the parties' roles and obligations that prevented Mr. Grate from acting independently or (2) that Mr. Grate was a loaned servant to Mr. Malburg at the time of the accident.

## IV.    CONCLUSION

For reasons stated above, the Court:

GRANTS IN PART AND DENIES IN PART Defendants' Motion *in Limine* to Exclude Certain Testimony of Plaintiff's Expert Lew Grill (ECF No. 28);

DENIES Defendants' Motion *in Limine* to Preclude Plaintiff From Introducing Evidence Relating to the Federal Motor Carrier Regulations (ECF No. 43);

GRANTS IN PART AND DENIES IN PART Defendants' Motion *in Limine* to Preclude Any Reference to Failure to Have Agreed Upon Hand Signals (ECF No. 61);

GRANTS IN PART AND DENIES IN PART Defendants' Motion *in Limine* to Preclude Any Reference to Defendant Kagy Farm's Failure to Adopt a Policy Regarding Spotters (ECF No. 54);

GRANTS IN PART AND DENIES IN PART Defendants' Motion *in Limine* to Exclude Certain Testimony of Plaintiff's Expert Thomas Green (ECF No. 29);

DENIES Defendants' Motion *in Limine* to Exclude Plaintiff's Exhibit 115 (ECF No. 51);

GRANTS Defendants' Motion *in Limine* to Preclude Any Evidence Concerning Negligent Loading of the Trailer by Defendant Kagy Farms (ECF No. 53);

DENIES Defendants' Motion to Strike Plaintiff's Supplemental Expert Disclosures (ECF No. 60);

GRANTS IN PART AND DENIES IN PART Defendants' Motion *in Limine* to Preclude any Expert Testimony by Bader J. Cassin, M.D. (ECF No. 42); and

DENIES Defendants' Motion *in Limine* to Preclude any Evidence Concerning the Parties' Roles Which is Contrary to the Contract (ECF No. 52).

IT IS SO ORDERED.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 9, 2014


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 9, 2014.


s/Deborah Tofil
Case Manager